Glee F. LITTLE, Independent Executrix of the Estate of James Phillip Little, Deceased, Appellant,

v.

X–PERT CORPORATION, Appellee.

No. 07–92–0075–CV.

Court of Appeals of Texas, Amarillo.

Nov. 23, 1992.

Rehearing Denied Jan. 6, 1993.

Buzzard Law Firm, Mark N. Buzzard, Pampa, Robert S. Flaniken, Oklahoma City, OK, for appellant.

Burdett, Morgan & Thomas, Warlick Thomas, Paul H. Williamson, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

POFF, Justice.

By three points of error, appellant Glee F. Little, independent executrix of the estate of James Phillip Little, brings this appeal from the trial court's order granting final summary judgment for X–Pert Corporation, appellee. We will overrule the points of error and affirm the judgment of the trial court.

In 1989, James Little, David Smith, Alfred Smith, Harold Lawley and their respective wives incorporated a new Texas corporation known as X–Pert Corporation (X–Pert). Each husband-wife unit owned 25 percent of the corporation's outstanding shares. On June 1, 1989, each of the eight shareholders signed a "Buy–Sell Agreement." The Buy–Sell Agreement was executed to provide for the purchase and sale of a shareholder's interest in X–Pert in the event of a stockholder's death or the inter vivos sale of all or part of a stockholder's common stock.

The Buy–Sell Agreement required that X–Pert purchase and maintain $250,000 of insurance coverage on the lives of Messrs. Little, Smith, Smith and Lawley. X–Pert purchased the requisite life insurance policies and paid all the premiums necessary to keep the policies in force. X–Pert was both the owner and beneficiary of the policies.

On March 31, 1991, James Little and his wife Glee Little sold all of their stock in X–Pert to Alfred Smith. Just over a month later on May 3, 1991, James Little died. Subsequent to James Little's death, Glee Little (appellant) asserted a right to the proceeds of the life insurance policy. Appellant felt she was entitled to the proceeds pursuant to Paragraph 10 of the Buy–Sell Agreement which states:

> In the event of the sale of a stockholder's interest during his or her lifetime, or upon the termination of this buy-sell agreement for any reason, each respective insured stockholder shall have the right to retain all contracts of insurance on his or her life appurtaining [sic] to this agreement.

X–Pert felt strongly that it was entitled to the life insurance proceeds since James Little had not requested any changes to be made as to the owner or beneficiary of the policy between the time he sold his stock and the time he died. X–Pert initiated litigation by filing a petition for declaratory judgment seeking the court to declare that it is the rightful owner of the proceeds under the policy.

In response to X–Pert's petition, Mrs. Little filed a general denial as well as a counterclaim which reads as follows:

> Plaintiff [Glee Little] alleges and states that X–Pert, its officers and directors stand in a fiduciary relationship to Plain-

tiff and as such are trustees for the benefit of Plaintiff pursuant to the terms of the Buy–Sell Agreement and the proceeds of the Policy. By asserting a contrary right to the proceeds of the Policy, denying Plaintiff's rights in the Policy, refusing to deliver over the Policy or a copy thereof to Plaintiff and by refusing to process Plaintiff's rights in the Policy with the Defendant Insurance Company in a timely, reasonable and prudent manner, the Defendant X–Pert, its officers and directors have breached their fiduciary and trust obligations to Plaintiff and Decedent's Estate.

Mrs. Little then filed a motion for partial summary judgment. In response, X–Pert filed a cross-motion for summary judgment in which it claimed to be entitled to the proceeds of the policy "because: (1) The terms of the policy are *not* ambiguous and at the time of the insured's death, the designated beneficiary was Plaintiff [X–Pert]; and (2) The terms of the Buy–Sell Agreement are not ambiguous and JAMES PHILLIP LITTLE never requested change of beneficiary under the policy." The trial court granted X–Pert's cross-motion for summary judgment, stating that X–Pert is the rightful owner of the life insurance proceeds and that X–Pert owed no further duty or obligation to appellant with regard to the policy proceeds.

In her first point of error, appellant contends the trial court erred in finding that the life insurance proceeds should be paid to X–Pert. Appellant argues that Paragraph 10 of the Buy–Sell Agreement "is clear and unambiguous and can only mean that when James Little sold his stock, it was intended by the parties that he have the right to the insurance policy, including the death benefit, on his life." We agree that the clear intent of Paragraph 10 was to give James Little a right to the insurance policy (and the policy's proceeds) upon the sale of his stock. However, the summary judgment evidence clearly shows that

James Little did not exercise that right. A right unexercised is a right unclaimed. Upon the death of James Little, the policy proceeds vested immediately in X–Pert Corporation, the beneficiary under the policy. *Fidelity Union Life Ins. Co. v. Methven,* 162 Tex. 323, 327, 346 S.W.2d 797, 800 (1961). X–Pert has a legal right to the proceeds. Point of error one is overruled.

In her second point of error, appellant contends the trial court erred in concluding she did not have a viable cause of action on her counterclaim that X–Pert owed her a duty to process, request and secure a change of the policy's owner and beneficiary from X–Pert to her.[1] However, appellant cites no law that would impose such a duty on X–Pert, even if X–Pert did stand in a fiduciary relationship to the Littles. It would be a stretch to say that a duty of good faith and fair dealing required X–Pert to exercise a right exclusively vested in James Little, i.e., the right to request and secure a change in the policy's owner and beneficiary.

In her third point of error, appellant argues that the trial court erred in overruling her motion for new trial on the basis of newly discovered evidence. We disagree.

The newly discovered evidence in question is that on the evening of James Little's death, David Smith, the chief executive officer of X–Pert, stated that he had some insurance papers he needed Mrs. Little to sign and patted the outside of his jacket so as to indicate that he had the papers with him. Mrs. Little suggests that this information could be properly admitted into evidence through the affidavits of two persons who heard Smith make the statement. Assuming, *arguendo*, that the evidence is admissible, it is still readily apparent that the evidence is immaterial. Even if David Smith made these statements, the trial court's order of summary judgment would still be correct. Smith's purported statements do not refer in any way to the

---

1. We note that the trial court's order of summary judgment finding "that X–PERT CORP. is the rightful owner of all proceeds" of the life insurance policy is broad enough to constitute a determination of Mrs. Little's counterclaim. A summary judgment may specifically dispose of a plea for relief by implication. *Walker v. Sharpe,* 807 S.W.2d 442, 445 (Tex.App.—Corpus Christi 1991, no writ).

Buy–Sell Agreement. Nor do the statements refer to any duty on the part of X–Pert to secure a change in beneficiary on the life insurance policy in question. Since a necessary prerequisite to the granting of a new trial on grounds of newly discovered evidence is that the new evidence be so material as to probably produce a different result if a new trial were granted, *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex. 1983), the trial court did not err in refusing to grant a new trial in this case. Point of error three is overruled.

The judgment of the trial court is affirmed.

